IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30848
Summary Calendar
_____


BERND WOHLSCHLAEGER

                        Plaintiff - Appellant

        v.

FAIRMONT HOTEL COMPANY, New Orleans,
a California Limited Partnership

                        Defendant - Appellee
_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(95-CV-922)
_____
March 22, 1996
Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

        Bernd Wohlschlaeger appeals the district court's Rule

12(b)(6) dismissal of his complaint against the Fairmont Hotel

Company ("Fairmont") for breach of contract and other claims

arising out of his termination.  We affirm in part, vacate in

part, and remand.

_____

        [*]     Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

## I.  BACKGROUND

Bernd Wohlschlaeger was hired by Fairmont, a California limited partnership, on April 1, 1969.  After completing Fairmont's management training program, Wohlschlaeger was made resident manager of the Fairmont Hotel-New Orleans.  He was promoted to general manager in 1981.  In a letter dated July 1, 1987, Fairmont's President and C.E.O., Richard Swig, notified Wohlschlaeger that he had been chosen to participate in Fairmont's retirement plan.  A Summary Plan Description for Participants (the "Plan Description") accompanied Swig's letter.

On September 10, 1993, Wohlschlaeger was terminated. Wohlschlaeger was told that he was not vested in any retirement program and that there were no retirement funds to which he was entitled.  Wohlschlaeger executed a "General Release and Covenant Not to Sue" (the "Release"), in consideration for which Fairmont agreed to pay him $118,000.  In March 1995, the Massachusetts Mutual Life Insurance Company mailed Wohlschlaeger an IRS Form 1099-R indicating a distribution to Wohlschlaeger of $1,367.15 from the Fairmont Hotels Pension Plan.

On March 21, 1995, Wohlschlaeger filed a complaint against Fairmont in the United States District Court for the Eastern District of Louisiana, alleging breach of contract, detrimental reliance, fraud, intentional infliction of emotional distress, misrepresentation, duress, coercion, and unjust enrichment.  The district court granted Fairmont's motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

2

After Wohlschlaeger submitted his First Amendment to Complaint, Fairmont filed a motion to dismiss Wohlschlaeger's claim pursuant to Federal Rule of Civil Procedure 12(b)(6). On August 2, 1995, relying on the pleadings and on its review of the Plan Description, the district court granted the motion to dismiss. Wohlschlaeger appeals.

## II.  DISCUSSION

Wohlschlaeger asserts eight claims against Fairmont. He brings claims for intentional infliction of emotional distress and misrepresentation. These two claims sound in tort and have prescribed. He alleges breach of contract, fraud, duress, coercion, and detrimental reliance. These claims fail because the employment relationship between Wohlschlaeger and Fairmont was at-will. Wohlschlaeger also brings a claim of unjust enrichment. We conclude that this claim also fails, except as to Wohlschlaeger's request for an accounting of the funds to which he is entitled under Fairmont's retirement program. We address these claims in order.

A.   The Tort Claims

We review de novo a district court's dismissal under Rule 12(b)(6). Leffall v. Dallas Indep. School Dist., 28 F.3d 521, 524 (5th Cir. 1994). Accepting the allegations of the complaint as true, we do not affirm the district court's dismissal unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to

3

relief.  <u>Benton v. United States</u>, 960 F.2d 19, 21 (5th Cir. 1992).

We conclude that the district court properly dismissed Wohlschlaeger's claims for intentional infliction of emotional distress and misrepresentation because these claims are delictual.  In a diversity action, federal courts must apply the substantive law of the forum state.  <u>Mills v. Davis Oil Co.</u>, 11 F.3d 1298, 1304 (5th Cir. 1994).  Louisiana law provides that delictual actions are subject to a liberative prescription of one year which commences to run from the day injury or damage is sustained.  La. Civ. Code art. 3492.  Wohlschlaeger claims that his wrongful termination occurred on September 10, 1993.  Because he did not file the instant action until March 21, 1995, his claims for intentional infliction of emotional distress and misrepresentation have prescribed.

B.   The Contract Claims

Arguing that his employment with Fairmont was for a definite term, Wohlschlaeger alleges breach of contract and other contract related claims--fraud, duress, coercion, and detrimental reliance.  Wohlschlaeger contends that he and Fairmont entered into an employment contract whereby his lifelong tenure was purchased for valuable consideration in the form of his continued loyalty.  To support his contention, Wohlschlaeger relies on Fairmont's Employee Handbook and the letter from Swig.  He also argues that the Release to which he agreed was procured through fraud, duress, and coercion.

4

Where the district court considers matters outside the pleadings--as the district court did in this case by taking into account the Plan Description, Rule 12(b) requires the court to treat a motion to dismiss as a motion for summary judgment. <u>Central Nat'l Bank of Waco v. FDIC</u>, 910 F.2d 1279, 1280 (5th Cir. 1990). If a motion to dismiss is treated as a motion for summary judgment, the nonmovant must be accorded the procedural safeguards of Rule 56. <u>Washington v. Allstate Ins. Co.</u>, 901 F.2d 1281, 1284 (5th Cir. 1990). Rule 56 requires that the nonmovant be given ten days within which to respond to a motion for summary judgment. <u>Id.</u> However, in some cases it is not necessary for the district court to give notice after it decides to treat a Rule 12(b)(6) motion as one for summary judgment; the issue is whether the nonmovant "had ten days' notice after the court accepted for consideration matters outside the pleadings." <u>Id.</u> In this case, the Plan Description was submitted to the court by Wohlschlaeger himself.[2] Moreover, Wohlschlaeger does not complain of the district court's conversion of Fairmont's Rule 12(b)(6) motion to one for summary judgment. We find that Wohlschlaeger was on notice for more than ten days that the trial court could treat the motion to dismiss as a motion for summary judgment. The notice provisions of Rule 12(b) and Rule 56 were not violated.

---

[2]    Along with his pleadings, Wohlschlaeger also submitted to the court a copy of Fairmont's Employee Handbook, the Release, and the Form 1099-R that was sent to him by Massachusetts Mutual. The text of Swig's letter was included in both Wohlschlaeger's original complaint and his First Amendment to Complaint.

We review the granting of a motion for summary judgment <u>de novo</u>, applying the same criteria used by the district court in the first instance.  <u>Norman v. Apache Corp.</u>, 19 F.3d 1017, 1021 (5th Cir. 1994); <u>Conkling v. Turner</u>, 18 F.3d 1285, 1295 (5th Cir. 1994).  Summary judgment is proper "if the admissions, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).

Under Louisiana law, "a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."  La. Civ. Code art. 1906.  "Where there is no specific contract between an employee and an employer, the employee is at-will and may be terminated for any reason, at any time."  <u>Finkle v. Majik Market</u>, 628 So. 2d 259, 262 (La. App. 5 Cir. 1993) (citing La. Civ. Code 2747).  However, if the employee has given a consideration in addition to the services that he promised to perform, an otherwise at-will contract for employment may be modified to one for a definite term.  <u>Pitcher v. United Oil & Gas Syndicate</u>, 139 So. 760, 761 (La. 1932).

As evidence that a lifetime employment contract existed between the parties, Wohlschlaeger offers, to no avail, Fairmont's Employee Handbook.  The handbook contained a disclaimer which stated that "[e]ither the employee or the hotel can terminate the employment relationship at will, and nothing

6

contained in these corrective actions steps should be interpreted as creating an employment contract between Fairmont Hotels and its employees."  Wohlschlaeger attempts to discount the effect of this disclaimer by arguing that it was not sufficiently conspicuous.  To buttress this argument he relies on <u>Jimenez v. Colorado Interstate Gas Co.</u>, 690 F. Supp. 977, 988 (D. Wyo. 1988).  Wohlschlaeger's reliance on <u>Jimenez</u> is misplaced because the <u>Jimenez</u> court applied Wyoming law which includes a judicially-created exception to employment at-will.  This exception--that an employee handbook may constitute an implied term of an employment contract--has not been accepted by Louisiana courts:

> (1) There are no Louisiana cases holding that employee manuals, policies, or grievances procedures confer any contractual rights upon employees or create any exceptions to the "employment at will" doctrine.
> (2) Several Louisiana cases have held that employee manuals as well as company policies and procedures do not confer contractual rights upon employees nor create any exceptions to the "employment at will" doctrine.

<u>Mix v. University of New Orleans</u>, 609 So. 2d 958, 964 (La. App. 4 Cir. 1992).  We find that the Employee Handbook was merely a unilateral expression of company policies and procedures.  Any benefits conferred by the handbook were merely gratuitous and were not binding on Fairmont.

Also unavailing is Wohlschlaeger's reliance on the letter from Swig.  This letter notified Wohlschlaeger that he had been chosen to participate in Fairmont's retirement program.[3]

---

[3]     Swig's letter read as follows:

7

Wohlschlaeger argues that the letter confirms that Fairmont promised to employ him until his retirement.  We disagree with Wohlschlaeger's characterization of Swig's letter as a lifetime contract of employment.  We do not find "that [the employee's] participation in [the company's] retirement program established a fixed term of employment.  [The employee's] entitlement to retirement benefits was not a contract for a specific term." Williams v. Touro Infirmary, 578 So. 2d 1006, 1009 (La. App. 4

---

Dear Bernd,

You are among a select group of employees chosen to participate in our salary continuation program.

The plan is designed to provide you with continuing income for a period of time after you reach normal retirement age and to provide financial security to your designated beneficiaries in the event of your death prior to receiving the maximum benefits to which you are entitled by the plan.

Your selection to this plan was based upon the desire of the company to reward you for your future years of service and loyalty.

Enclosed you will find a summary of the plan and your individual certificate of participation.

Once again, let me tell you how pleased we are to provide you with this substantial benefit and congratulate you for having been chosen to receive it.

Sincerely,


Richard L. Swig
President & Chief Executive Officer

8

Cir. 1991) (concluding that terminated infirmary workers were at-will employees despite participation in retirement program).

We conclude that, as a matter of law, there was no contract between Wohlschlaeger and Fairmont. Wohlschlaeger cannot reasonably rely on either the Employee Handbook or Swig's letter to transform his at-will employment into employment for a term. Therefore, Wohlschlaeger's termination did not constitute breach of contract. Furthermore, because we find no contract, the issues of duress, fraud, and coercion are moot.

Wohlschlaeger also asserts a claim for detrimental reliance. The elements of a claim for detrimental reliance are: (1) a promise; (2) reasonable reliance on that promise; and (3) resulting detriment. Carter v. Huber & Heard, Inc., 657 So. 2d 409, 411 (La. App. 3 Cir. 1995) (citing La. Civ. Code art. 1967). Wohlschlaeger is unable to carry his burden to support a detrimental reliance claim because any reliance on either the Employee Handbook or Swig's letter was unreasonable. In this instance, as with Wohlschlaeger's other contract claims, summary judgment was proper.

C.   Unjust Enrichment

Finally, Wohlschlaeger alleges unjust enrichment. Under Louisiana law, the five prerequisites for an action in unjust enrichment are: (1) an enrichment on the part of the defendant; (2) an impoverishment on the part of the plaintiff; (3) a causal relationship between the enrichment and the impoverishment; (4) an absence of justification for the enrichment or impoverishment;

9

and (5) no other remedy at law.  <u>Deubler Elec. Inc. v. Knockers of Louisiana, Inc.</u>, 665 So. 2d 481, 484 (La. App. 5 Cir. 1995) (citing <u>Edwards v. Conforto</u>, 636 So. 2d 901 (La. 1993)). Determining that "the obvious justification for any enrichment and/or impoverishment is the plaintiff's prior at-will employment with the Fairmont," the district court found that the fourth prerequisite was not satisfied.  The court determined, therefore, that Wohlschlaeger could not prevail on his claim of unjust enrichment.  As to this issue, we conclude that summary judgment in favor of Fairmont was proper, except as discussed below.

D.    Request for an Accounting

Wohlschlaeger requests an accounting of the benefits due him under Fairmont's retirement program.[4]  He argues that he was vested in the retirement program and was entitled to a distribution.  As support for his claim, Wohlschlaeger offers the Form 1099-R sent to him by Massachusetts Mutual.  The Form 1099-R indicated a payment distribution to Wohlschlaeger of $1,367.15 from the Fairmont Hotels Pension Plan.  Wohlschlaeger denies under oath receiving the money.

The district court did not address Wohlschlaeger's request for an accounting or the Form 1099-R.  The claim for an

---

[4]    Fairmont argues that because Wohlschlaeger did not raise his claim for an accounting in the lower court, he is precluded from arguing this issue on appeal.  Contrary to Fairmont's assertion, however, Wohlschlaeger did claim in his pleadings that he had been denied an accounting and a reconciliation.

10

accounting may sound in contract or unjust enrichment. It is likewise unclear if Fairmont is the correct defendant or whether one or more other defendants must be parties to the action. Whatever is determined in this regard, to the extent that the district court did not address Wohlschlaeger's request for an accounting, we vacate and remand.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's Rule 12(b)(6) dismissal of the claims of intentional infliction of emotional distress and misrepresentation and the summary judgment as to the claims of breach of contract, fraud, duress, coercion, detrimental reliance, and unjust enrichment; however, as to any claims properly asserted in connection with the request for an accounting, we VACATE and REMAND for further proceedings consistent with this opinion. Each party shall bear its own costs.